William Von **SLEICHTER**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 5133.

District of Columbia Court of Appeals.

Argued Jan. 20, 1970.

Decided June 30, 1970.

Sol Rosen, Washington, D. C., appointed by the court, for appellant.

John O'B. Clarke, Jr., Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and John G. Gill, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before KERN, GALLAGHER and NEBEKER, Associate Judges.

## JUDGMENT

PER CURIAM.

This cause came on for hearing on the record on appeal and the briefs of the parties and was argued by counsel. On consideration thereof, it is by the court this 30th day of June, 1970,

Ordered and adjudged that the judgment of conviction be and hereby is affirmed.

Statement of Associate Judge NEBEKER, who votes to affirm: This is an appeal from a judgment of conviction of possession of heroin in violation of D.C.Code 1967, § 33–402. Appellant personally waived trial by jury and is taken to have agreed to the stipulation made just prior to the waiver that the issue of guilt depended entirely on the legality of the seizure of the heroin. For his possession of this most insidious of all dangerous drugs a fine of "$100 or 90 days" in jail was levied.

Officer Dinger, who had been assigned to the particular area in the Georgetown section of this city for about three months, was on foot patrol shortly after 8 p. m. on October 3, 1969. He described the area as being "high in narcotics traffic." From across a street, the officer saw appellant and two other male persons, whom he did not recognize, "standing in a darkened area." He concluded from what he saw "that there was a narcotic transaction made —because of the way the hands were changing in the group. * * * [T]he defendant and the other two male subjects [were] standing there close together. They were talking and their hands were going in between them. They were in a close

group." The officer, being suspicious,[1] approached the group to investigate and as he did so, appellant, who observed him coming, "began to walk away rapidly." When the officer asked to speak to appellant for a minute he uttered a vile directive and ran. In giving chase, the officer rounded a corner and was told by a couple who were walking by that appellant had crossed the street and was hiding behind a Volkswagen parked at the curb. Officer Dinger walked to the other side of the car and found appellant lying on the ground next to the curb "attempting to crawl under the car." Appellant was prone with his hands under his stomach. The officer told appellant he was under arrest for disorderly conduct. Appellant refused two requests to bring his hands out, but on the third request, with an added statement that he would be assisted, appellant moved his hands into view and got to his feet. As he did so the officer saw "a plastic bag containing five pieces of tin foil" in the area where appellant had been lying. The officer seized the bag and it later proved to contain the contraband.

At the motion to suppress the parties dealt only with the issue of probable cause. Appellant also asserted that it was illegal to arrest him for disorderly conduct. He relied upon Williams v. District of Columbia, 136 U.S.App.D.C. 56, 419 F.2d 638 (1969), for the contention that the vile directive could not constitute the offense of disorderly conduct. The trial judge denied the motion without making specific findings.

As I see in this case we need not and should not reach these points because it can be otherwise concluded that the seizure did not result from unreasonable invasion of appellant's fourth amendment right to be secure from unreasonable seizure. *Cf.* United States v. Van Leeuwen, 397 U.S.

249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). *Compare* Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), and United States v. Curtis, 138 U.S.App.D.C. ——, 427 F.2d 630 (decided *en banc* May 19, 1970). And see Young et al. v. United States, U.S.App.D.C. (Nos. 21,756, 21,757, 21,857, decided June 26, 1970).

Since the inception of the exclusionary rule, the question has always been—did the officers of the state have probable cause to encroach upon the liberty of the citizen? Phrased differently—was the action of the police reasonable under the circumstances? Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The necessity always to decide this issue has earlier been taken for granted except where the defendant abandoned the evidence[2] or otherwise lacked standing to challenge its admissibility.[3]

With the decision of the Supreme Court of the United States in Terry v. Ohio, *supra,* a new approach appears permissible and desirable where police justifiably pursue an investigative course necessitating limited encroachment on personal freedom and security. This is not to say that if police conduct progresses to a point where significant and substantial trappings of formal arrest are present, including but not limited to an in-depth or body search, that a lack of probable cause can be plastered over and ignored. Such a case was recently decided by the United States Court of Appeals for the District of Columbia Circuit where the arrest was made with guns drawn and an immediate thorough search was undertaken. *See* United States v. Cunningham, 138 U.S.App.D.C. 29, 424 F.2d 942 (decided April 1, 1970). In the instant case as discussed *infra,* the events prior to the seizure of the heroin lacked

---

1. He had observed a similar situation two nights before and it turned out to be a narcotics transaction.

2. *See, e. g.,* Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

3. *See, e. g.,* Parman v. United States, 130 U.S.App.D.C. 188, 399 F.2d 559 (1968).

significant and substantial indicia of formal arrest.

In its opinion in *Terry,* the Supreme Court clearly indicates that an officer's action can be held valid "regardless of whether he has probable cause to arrest the individual for a crime." *Id.* 392 U.S. at 27, 88 S.Ct. at 1883. See also Keiningham v. United States, 113 U.S.App.D.C. 295, 307 F.2d 632 (1962). Such approach permits a testing of certain limited police action resulting in seizure of evidence on a *Terry* standard without the necessity of first reaching, the question of probable cause. *Cf.* Young, et al. v. United States, *supra,* slip opinion at 5.

The desirability of looking initially to whether some police action was justified without necessarily first deciding whether probable cause existed is apparent when it is recognized that police should be encouraged to commendable behavior and discouraged from condemnable behavior. When, in his view, an officer deems it his duty to investigate ongoing activity, he should not be prompted to refrain from action because he, rightly or wrongly, may believe he lacks probable cause. Likewise, where his instinct to investigate is activated, he should not be placed in the intolerable position of knowing that further investigation may result in an "arrest" without probable cause. *See* Coleman v. United States, 137 U.S.App.D.C. 48, 420 F.2d 616 (1969) (Bazelon, C. J., concurring, Part II). I believe such a method of reviewing police action in cases where *Terry* rationale applies is appropriate and advisable.

The question as I see it here then is whether the circumstances and the conduct of the police permit an application of *Terry* principles to justify the seizure. *Terry,* of course, deals with a rapidly moving on-street investigation where the police must, to be effective, act in quick progres-

sion. This case is like *Terry* in that sense and, thus, I would hold that it is appropriately decided under that precedent. In making this decision it must be kept in mind that the Supreme Court was careful to limit the scope of circumstances and the, nature of police conduct which would be justified short of arrest. Moreover, the Court emphatically rejected the proposition that a "seizure" of the person under circumstances not resulting in the "traditional" or formal arrest[4] was beyond the proscription of the fourth amendment. Accordingly, a determination to apply the *Terry* rationale must be made with circumspection and in the fourth amendment context of reasonableness. In an analysis of the facts, it must be kept in mind that the police need "an escalating set of flexible responses, graduated in relation to the amount of information they possess." 392 U.S. at 10, 88 S.Ct. at 1874.

"The crux of this case * * * is not the propriety of Officer [Dinger's] taking steps to investigate [appellant's] suspicious behavior, but rather, whether there was justification for [Dinger's] invasion of [appellant's] personal security by [requiring him to move his hands into view and get off the ground]." Terry v. Ohio, *supra* at 23, 88 S.Ct. at 1881. In the course of investigating what might have been a narcotic transaction, the officer was met with vile words, flight and a bizarre attempt to hide under a small car. When the officer, naturally continuing his investigation, located appellant, it was reasonable, both for security and the sake of the investigation,[5] to seize appellant by demanding that he put his hands into view and get up. It is, after all, too much to expect the officer to continue with appellant lying in the gutter concealing his hands. *Terry, supra,* at 23–24, 88 S.Ct. 1868.

Since the actions of the police officer were reasonable to the point of "seizing"

---

4. Entailing "a trip to the station house and prosecution for crime". Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877 (1968).

5. Coleman v. United States, 137 U.S.App. D.C. 48, 420 F.2d 616 (1969) (Bazelon, C. J., concurring, Part II), and Young v. United States, *supra,* slip opinion at 5–6, 7.

appellant by demanding he put his hands in view, it cannot be said that the discarding of the narcotics was the product of illegal police action as in Williams v. United States, 99 U.S.App.D.C. 161, 237 F.2d 789 (1956). *See, also* Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L. Ed.2d 441 (1963). In *Williams,* the defendant, who was illegally arrested, attempted to discard the contraband while in the precinct station. It was held that the abandonment was the product of the illegal arrest and the Government was deprived of that approach to justify the seizure of the evidence. In addition, it cannot be said that Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), requires a contrary result. In that case, the seizure of the defendant was immediately followed by a "body search" beneath the surface of the clothing. That search was motivated only by a desire to look for narcotics. Here there was no such search which led to the recovery of the seized contraband. Since the seizure of the evidence in this case was not the result of an unreasonable intrusion of appellant's freedom—*i. e.,* a seizure of his person—the denial of the motion to suppress was not error.

The question remains whether the *Terry* rationale can be applied when the officer, rightly or wrongly, intended to arrest appellant for an offense. Neither the opinion of the Supreme Court in *Terry* nor the opinion of the Ohio Court of Appeals [6] discloses that Officer McFadden thought he was arresting Terry for a specific offense. I adhere to the view that the officer's state of mind, in the circumstances of this case, is not controlling in making a judicial determination whether he otherwise acted reasonably under fourth amendment standards in seizing appellant. No court, to my knowledge, requires that an arresting officer correctly go through the legal reasoning which in his mind justifies his action. While police are held to a high standard, they cannot be expected to

engage in an intricate legal analysis when faced with difficult on-street situations. Lawyers and judges, in the relative quiet of the courthouse or library, have difficulty enough arriving at a correct legal theory under which to test the propriety of police action. This case is a good example. *Cf.* Jackson v. United States, 112 U.S.App.D.C. 260, 262, 302 F.2d 194, 196 (1962). The validity of this kind of police action just cannot turn on the hasty legal conclusions of an officer relatively untrained in the law. I find support for this conclusion in United States v. Bonds, 422 F.2d 660, 664 (8th Cir. 1970), and Payne v. United States, 111 U.S.App.D.C. 94, 96, 294 F.2d 723, 725, cert. denied, 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed 83 (1961). See particularly Coleman v. United States, 137 U.S.App.D.C. 48, 420 F.2d 616 (1969) (Bazelon, C. J., concurring, Part II), where, notwithstanding intent to arrest manifested by a drawn gun, the author would apply Terry v. Ohio, *supra,* in determining reasonableness. Indeed, it has been held that an expressed intent to refrain from arresting a suspect is not controlling if the suspect would otherwise think he was under arrest. Seals v. United States, 117 U.S.App.D.C. 79, 325 F.2d 1006 (1963). I do not believe that the Supreme Court, concerned as it was in *Terry* for the necessity to investigate suspicious behavior and the safety of investigating officers, intended to limit its holding to cases where an officer acted knowing or believing he lacked probable cause to arrest, but "seized" the person to investigate anyway. If an officer's error as to the offense for which he believes there is probable cause to arrest is of no consequence (Payne v. United States, *supra*), or as to when the arrest occurred despite his intentions (Seals v. United States, *supra*), it should make no difference that the officer in this case intended a formal arrest, when he could have, and perhaps should have, intended only a momentary stop or "seizure" as recognized in *Terry.* Of course, this approach should

6. Ohio v. Terry, 5 Ohio App.2d 122, 214 N.E.2d 114 (1966).

be limited to situations where, as here, the evidence seized or recovered was not come by primarily as the result of a progression of events which exclusively possess the "concomitants of arrest". Hicks v. United States, 127 U.S.App.D.C. 209, 213, 382 F.2d 158, 162 (1967). Here the heroin was on the ground as appellant got to his feet.

Accordingly, I conclude that appellant's personal security was reasonably invaded by the police officer who had no other rational choice than to proceed as he did. I further conclude that it is wrong for the court to be governed in its decision by the label hastily placed by the officer upon his official conduct when an alternative theory clearly is available to uphold that conduct and thus the seizure of the heroin in this case. I, therefore, vote to affirm the conviction.[7]

Statement of Associate Judge KERN, who votes to affirm: The arresting officer testified that he heard appellant shout in the presence of several private citizens on a residential street a certain statement considered obscene by the officer.[1] Believing that appellant had thus committed the crime of disorderly conduct, D.C.Code 1967, § 22–1107, the officer placed appellant under arrest. In my view, the officer had probable cause to effect such an arrest, and therefore the later retrieval of the heroin was not tainted. Cf. Work v. United States, 100 U.S.App. D.C. 237, 243 F.2d 660 (1957); Williams v. United States, 99 U.S.App.D.C. 161, 237 F.2d 789 (1956).

Section 22–1107 makes it unlawful "for any person * * * to curse, swear, or make use of any profane language or indecent or obscene words * * *." In Williams v. District of Columbia, 136 U.S. App.D.C. 56, 419 F.2d 638, 646 (1969) (footnotes omitted, emphasis added), the Circuit Court read into this section the requirement

> that the language be spoken in circumstances which threaten a breach of the peace. And for these purposes a breach of the peace is threatened *either* because the language creates a substantial risk of provoking violence, *or because it is, under "contemporary community standards," so grossly offensive to members of the public who actually overhear it as to amount to a nuisance.*

The court was concerned lest it run afoul of either Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), by holding words not "inherently inflammatory" to be "fighting words," or Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), by holding it unlawful to utter obscene words in private when they were not overheard by anyone.

An examination of the court's opinion in Williams v. District of Columbia, *supra,* discloses that the epithets hurled at the arresting officer were perhaps profane, indecent, and uncivil, but hardly of such character as to qualify as an *obscene* nuisance. Since the language did not constitute a nuisance, and further, there being no allegation of imminent violence, the court reversed the judgment of conviction and ordered the information dismissed.

We know from the record in the instant case that appellant's words were spoken in public, within earshot of several citizens.[2]

---

7. I do not view our decision in Clarke v. United States, D.C.App., 256 A.2d 782, 786 n. 7 (1969), as precluding such an approach in this case. While the Government in that case alternatively urged a *Terry* approach to support the search and seizure of the razor, this court simply concluded that a valid arrest had taken place before the search. Accordingly, we did not need to reach the issue which I see clearly presented here.

1. The facts of the instant case are described in detail by Judge Nebeker in his Statement.

2. The arresting officer testified that five or six persons were on O Street in Georgetown at about 8:15 p. m. "within hearing range" of appellant's obscene shouting. Having heard appellant and seen the location of the others at the scene the officer could reasonably have concluded the probability of their hearing appellant without

We do not know if they found his language to be "grossly offensive," nor do we know if the Government could have proved beyond reasonable doubt that it violated "contemporary community standards," if appellant had come to trial on the charge of disorderly conduct.[3] However, in my judgment, the answers to these questions are irrelevant to the determination of this case.

> Whether a jury or judge would have convicted him is not the issue; it is whether at the time and place and in the circumstances above set forth [this officer] could reasonably believe—not necessarily beyond a reasonable doubt—that appellant's conduct came within the scope of the [statute].

Worthy v. United States, 133 U.S.App.D.C. 188, 190, 409 F.2d 1105, 1107 (1968). *See, e. g.,* Brinegar v. United States, 338 U.S. 160, 172–173, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Ellison v. United States, 93 U.S. App.D.C. 1, 3, 206 F.2d 476, 478 (1953). In my opinion, the police officer's conduct in arresting appellant for disorderly conduct was reasonable and based upon probable cause. Johnson v. United States, 125 U.S.App.D.C. 243, 244, 370 F.2d 489, 490 (1966).

The police officer's suspicions about appellant's narcotics activity do not affect the legality of the arrest. "When a police officer observes overt criminal conduct and makes an arrest, the fact that the officer suspects other violations not manifest at the time, such as illegal possession of narcotics * * * is totally irrelevant." Hutcherson v. United States, 120 U.S. App.D.C. 274, 278, 345 F.2d 964, 968 (Burger, J., concurring), cert. denied, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965). Because the arrest was lawful, the

seizure of the heroin was likewise lawful, and I therefore vote for affirmance.

Statement of Associate Judge GALLAGHER, who votes to reverse: I disagree with the conclusions reached by the other members of this hearing panel and will discuss my reasons separately as to each.

A. It is evident that, at a minimum, Judge NEBEKER has grave doubts that there was probable cause for an arrest in this case at the time it was announced by the police officer, else there would be no need to apply Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). I understand these doubts. He does not think lack of probable cause at that point is dispositive, however, because he believes the rationale of *Terry* controls. But he concedes that if "police conduct progresses to a point where significant and substantial trappings of formal arrest are present including but not limited to an in-depth or body search" a lack of probable cause cannot "be plastered over" by the *Terry* rationale. Essentially, I agree with this, except to the extent that he seems to define a formal arrest as necessarily including "an in-depth or body search." That strikes me as new and rather strong medicine.

If I understand *Terry* correctly it relates entirely to the investigation of "possibly criminal behavior." 392 U.S. at 22, 88 S.Ct. 1868. In a nutshell, it permits under reasonable circumstances a temporary detention of a suspect on the street for investigative purposes even though probable cause for arrest is lacking and, where prudent, a search for weapons at the outset of the temporary detention. 392 U.S. at 27, 88 S.Ct. 1868. But all this relates to activity short of an arrest.

---

having to halt his pursuit of appellant who was then in flight and question these "ear-witnesses." In determining the existence of probable cause to arrest, we deal with "reasonable probabilities, not absence of doubt, which reasonable men may enter-

tain." United States v. Cumberland, D.C. App., 262 A.2d 341, 343 (1970).

3. Language similar to that used by appellant has recently been held to be obscene when used in a printed circular. State v. Ceci, 255 A.2d 700 (Del.Super.1969).

In this case, the police officer announced to appellant that "he was under arrest for disorderly conduct" before he discovered and seized the narcotics. Consequently, the validity of the seizure must be dependent upon the validity of the arrest. *Terry* does not change this proposition.

Where I depart principally from Judge NEBEKER is in his failure to conclude that an actual arrest occurred here prior to that seizure, even though the officer stated specifically to appellant that he was under arrest and testified at the trial that he considered he was then making an arrest. I cannot agree that this was merely a "label hastily placed by the officer upon his official conduct" which we can overlook and, instead, apply *Terry*. A person can hardly be more under arrest than when an officer plainly tells him he is. In criminal law these are critical words and not mere conversation. All that remains is transportation to the precinct for booking. The fourth amendment area is elusive enough without adding another element. In my view, an arrest occurred when it was announced, foreclosing the application of Terry. Clarke v. United States, D.C.App., 256 A.2d 782, 786 n. 7 (1969).

B. I take it there is no dispute among us that at the time it was announced there was no probable cause for an arrest on the narcotics charge for which he was convicted. Judge KERN's view, however, is that the narcotics conviction should be affirmed because there was probable cause here to arrest for disorderly conduct. Appellant was not charged with disorderly conduct and, interestingly enough, the Government has not even contended in its brief that we should affirm on the ground of probable cause for the disorderly conduct arrest. Furthermore, at the hearing on the motion to suppress the narcotics in the trial court, the Government contended only that there was probable cause for an arrest on the narcotics charge. It did not mention the "disorderly conduct" aspect, let alone urge that there were reasonable grounds to arrest on this basis.[1]

Aside from the Government's apparent reluctance to offer this rationale to support the disorderly conduct arrest, I believe the law is clear that there was no probable cause. Under Williams v. District of Columbia, 136 U.S.App.D.C. 56, 419 F.2d 638 (1969), decided several months before this arrest and trial, there is no violation of the obscenity section of the disorderly conduct statute (D.C.Code 1967, § 22–1107), unless a breach of the peace is threatened "either because the language creates a substantial risk of provoking violence, or because it is, under 'contemporary community standards', so grossly offensive to members of the public who actually hear it as to amount to a nuisance." 136 U.S.App. D.C. at 64, 419 F.2d at 646 (footnotes omitted).

Here, as the officer crossed the street and said he wanted to talk to appellant, the latter hurled a two-word obscenity over his shoulder as he withdrew at a fast walk. Clearly, no provocation of violence was present as there was no move toward a confrontation, quite the contrary, and no threats were made. Secondly, under the circumstances the two-word obscenity could not have amounted to a "nuisance" under *Williams*. While the police officer believed there were "five or six citizens" in the area he said he did not know whether any had even heard the obscenity. Hence, the threshold consideration for a "nuisance" was clearly lacking.

---

1. The Government argued that the officer "[k]nows it is a high narcotics area [3100 block of O Street, N.W.]. He sees what could be, although he doesn't know, a narcotics transfer. He goes to investigate, the defendant yells a profanity and flees. * * * [W]e don't rely solely on the flight. We rely on three factors—the area; the transaction, the seemingly [sic] transaction, the officer saw; and, the flight. Which, in the Government's position, brings the case over the ledge to attain probable cause. It may be a fine question. That's the Government's position. We'll leave it to the Court to decide." Tr. 19.

Under these circumstances and in view of the *Williams* decision, I do not believe the officer reasonably could have believed that the crime of disorderly conduct had been committed in his presence by appellant. Consequently, he lacked probable cause to arrest.

Johnson v. United States, 125 U.S.App. D.C. 243, 370 F.2d 489 (1966), is pointed to as support for the validity of the arrest for disorderly conduct. I think *Johnson* is distinguishable for two reasons. It antedated *Williams, supra,* and the issue of what constitutes a violation of the disorderly conduct statute was not squarely presented. *Williams* is now the controlling pronouncement on that question in this circuit, in any event. Furthermore, the facts in *Johnson* were quite different. The record shows the defendant was seen running from a church about midnight. The police officer approached him and stated he wished to talk with him, whereupon the defendant patted his pocket which had "a very noticeable bulge" and said, "Oh, no [obscenity]" and backed away. As more officers arrived at the scene, the defendant ran between them and was later apprehended a distance from the scene. It later developed he had a pistol when he initially evaded the officers. He was arrested and booked for disorderly conduct, but was later charged with carrying a concealed weapon without a license after the pistol was located along the route he ran.

The court of appeals stated that "the obscene language addressed to the officer in *the circumstances of appellant's conduct*" supported the arrest for disorderly conduct. 125 U.S.App.D.C. at 244, 370 F.2d at 490. (Emphasis added.) I believe the circumstances there were considerably different if only because of the seeming threat by the defendant to use a gun. All things considered, I do not view *Johnson* as controlling here.

In taking this view of the case I do not intend to imply that I believe the police officer should not have pursued his on-the-street investigation of appellant. I simply conclude that he did not have reasonable grounds to arrest when he did; and this turned out to be crucial as it usually does. I most certainly think the courts should give the police all reasonable "elbow room" in the investigative phases of these moving street scenes and have said as much. Thompkins v. United States, D.C.App., 251 A.2d 636 (1969); Clarke, *supra.*

I conclude that the arrest was invalid and the motion to suppress should have been granted. I would reverse.