UNITED STATES, Appellant,

v.

Eric H. LYON, Appellee.

No. 9500.

District of Columbia Court of Appeals.

Argued Oct. 7, 1975.

Decided Dec. 8, 1975.

John W. Polk, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty. John A. Terry and Albert H. Turkus, Asst. U. S. Attys., were on the brief, for appellant.

James E. Clair, appointed by this court, for appellee.

Before REILLY, Chief Judge, KELLY, Associate Judge, and REVERCOMB, Associate Judge, Superior Court.*

KELLY, Associate Judge:

The government here appeals from a pretrial order granting appellee Eric Lyon's motion to suppress his signed confession on the ground that it was obtained in violation of his *Miranda*[1] rights. The trial judge ruled that the continued interrogation of Lyon after he had invoked his Fifth Amendment right to remain silent required that the confession subsequently obtained be excluded from the government's case in chief at trial.[2] We affirm.

Mr. Lyon, along with three other persons, was arrested on November 15, 1974, minutes after police had learned of an armed robbery which occurred in the vicinity of 15th and F Streets, N.W., at about 10:00 p. m. He was charged with armed robbery, robbery, assault with a dangerous weapon, and carrying a pistol without a license.

Immediately following his arrest, Lyon was taken to the scene of the offense

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Since the trial judge did not specifically rule the confession inadmissible for the purpose of impeaching Lyon at trial should he choose to testify, we do not reach the issue of whether it could be used for this purpose under *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

where he was identified by a complaining witness and a bystander as one of the robbers. He was read his *Miranda* rights at the scene and then transported to the Robbery Branch office, arriving there at about 11:00 p. m. At approximately 11:30 p. m. he again was advised of his rights by Detective Stephen Kuty and at that time filled out a printed form which indicated he did not wish to answer any questions.[3]

The testimony of Kuty and Lyon at the hearing on the motion to suppress differed sharply as to what transpired immediately after his refusal to waive his rights. Lyon stated that Kuty continued to question him about the offense. Kuty maintained that he had no further discussion with Lyon at this time and that he immediately left him handcuffed to a desk so he could interview the complaining witnesses in an adjacent office.

Kuty testified he returned to his desk at about 12:30 a. m., after an absence of approximately forty-five minutes, and began preparing a standard prosecution report, PD–163, in order to record employment, residence and other personal information concerning Lyon. Upon returning to his desk, Kuty said he informed Lyon that he had been identified as one of the robbers, but stated he did not question him regarding the offense.

While filling out the PD–163, Kuty was interrupted twice by two detectives who had been assigned to interview Lyon's co-suspects. The detectives reported that two of the suspects, Joseph Herbert and Thomas Lloyd, had independently stated that a fourth suspect, a juvenile, had not participated in the robbery. Kuty testified he then left his desk to question Herbert and Lloyd on this matter and that when he returned to his desk Lyon asked if the juvenile would be "cut loose". Shortly thereafter, Kuty informed him that this suspect could not be released because "no one wanted to give a statement saying that he (the juvenile) wasn't involved."[4] Minutes later, at about 1:45 a. m., Lyon told Kuty he would give a statement regarding the offense and also exonerating the juvenile. He was read his rights again and then executed a waiver form, identical to the one he had filled out earlier, indicating that he was willing to waive his *Miranda* rights.

The government urges that although Lyon invoked his right to remain silent at 11:30 p. m., subsequently he changed his mind and executed a valid waiver of his *Miranda* rights at 1:45 a. m.[5] It is contended the trial judge erred in ruling that the government failed to show by a preponderance of the evidence that the purported waiver immediately preceding the confession was knowing, intelligent and voluntary.[6]

■ The government correctly states that the validity of a purported waiver of constitutional rights must be determined in light of the particular circumstances in-

---

3. On the printed form Lyon answered "No." to the question "Do you wish to answer any questions?", while answering "Yes." to the question "Are you willing to answer questions without having an attorney present?" While these two answers are inconsistent, the government does not contend that this ambiguity could be construed against him to constitute a waiver of his Fifth Amendment right to remain silent.

4. The trial judge ruled that Lyon's confession was involuntary since it was induced in part by Kuty's statement to him concerning the reason for not releasing the juvenile. Since we decide only the *Miranda* issue, we need not determine whether the confession was voluntary under traditional due process standards and therefore admissible for impeachment purposes under *Harris v. New York, supra.*

5. Lyon executed a second waiver on the form on which his confession was reduced to writing.

6. *See Lego v. Twomey,* 404 U.S. 477, 92 S. Ct. 619, 30 L.Ed.2d 618 (1972); *Hawkins v. United States,* D.C.App., 304 A.2d 279 (1973).

volved including, *inter alia,* the education, experience and conduct of the accused.[7]

■ In the instant case, as noted *supra,* the testimony of Lyon and Kuty conflicted with respect to whether or not Lyon was interrogated immediately following his initial refusal to waive his rights. It is apparent that the trial judge chose to believe Lyon's testimony that questioning did continue after this point and therefore his *Miranda* rights were not fully honored. On this record, we cannot say that the trial judge's decision that the waiver was invalid lacked substantial support in the evidence.[8]

Affirmed.

7. *Pettyjohn v. United States,* 136 U.S.App. D.C. 69, 72 n. 7, 419 F.2d 651, 654 n. 7 (1969), *cert. denied,* 397 U.S. 1058, 90 S.Ct. 1383, 25 L.Ed.2d 676 (1970).

8. *See United States v. McNeil,* 140 U.S.App. D.C. 3, 6, 433 F.2d 1109, 1112 (1969).