William P. HARRIS, Appellant,

v.

UNITED STATES, Appellee.

No. 11645.

District of Columbia Court of Appeals.

Submitted Dec. 7, 1977.

Decided Jan. 20, 1978.

---

Frederick J. Sullivan, Washington, D. C., appointed by the court, for appellant.

Earl J. Silbert, U. S. Atty., Washington, D. C., with whom John A. Terry, William D. Pease, John C. Martin and Larry G. Whitney, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and KERN and NEBEKER, Associate Judges.

NEWMAN, Chief Judge:

Convicted of grand larceny after a bench trial on a stipulated record, appellant contends on appeal that the trial court committed reversible error in denying his motion to suppress tangible evidence. Finding no error, we affirm.

The facts are fairly stated in the government's brief on appeal and can be paraphrased therefrom as follows.[1] On June 21, 1976, at approximately 1:20 a. m., Metropolitan Police Officers Martha Clark and Dennis E. Larman were patrolling in a police cruiser in the 1100 block of 20th Street, Northwest. Officers Clark and Larman observed a man, later identified as appellant, leaving a parking lot at 1143 20th Street, Northwest, carrying a guitar case. From personal knowledge, Officer Larman was aware of a high incidence of auto larcenies in this area. As appellant got closer to the vehicle, Officers Larman and Clark observed that in addition to the guitar case, appellant carried a tape deck. The officers got out of their cruiser, stopped appellant, and asked him whether he had parked his car in the parking lot. Appellant answered that he had and that he was on his way home. Officer Larman then asked to see some identification. Appellant said his identification was in his car and began walking back to a black and red Chevrolet in the parking lot. The officers followed, and, as the trio stood next to the car, appellant said that his wife had dropped him off and that he did not have the keys to open the car to get his identification. Officers Clark and Larman, in spite of the darkness, saw puncture marks and scratches on the rubber molding around the driver's side wing window, as if someone had tried to tamper with the car. These type of marks were recognized by the officers to be "jimmy marks". Appellant then told the officers that the car belonged to a friend of his named Al, who was employed as a musician at a club a short distance away. Appellant suggested that the officers take him to the club to see Al and verify his identity and the ownership of the car. The officers agreed and requested that appellant submit to a pat down before he entered the cruiser. As Officer Larman completed the pat down, appellant reached into his pocket and gave Officer Larman a plumb bob.[2] Appellant said he used the bob to tune his guitar. Because Officer Larman had laid bricks before, he knew what the item was; he was also aware that it could be used to break into a vehicle through the window.

Arriving at a club located at 1800 N Street, Northwest, appellant called to a man passing the cruiser, who looked at appellant in the back seat of the cruiser and then walked away. Appellant then requested that the officers take him to a restaurant named Food for Thought because his wife worked there, and she could verify what he had told them. The officers agreed to go to that restaurant, but they decided to stop at the Rocky Raccoon res-

---

1. The evidence was not in dispute, and the trial court made no findings of fact.

2. A plumb bob is a string with metal tips on each end of the string and is used by bricklayers to make sure bricks are laid in a straight line.

taurant to see if anyone inside owned the Chevrolet before going to the Food for Thought restaurant. Officer Clark went inside the restaurant and, after a few minutes, came out with another man. Clark and the man went to the rear of the restaurant and disappeared.

Appellant and Officer Larman remained in the car and conversed generally. Larman noticed that appellant was perspiring heavily and biting his lip. As Officer Larman and appellant watched Officer Clark and the unidentified man reappear and walk over to a yellow Pontiac, Officer Larman asked appellant whether he owned the tape deck which he had been carrying, and appellant replied, "It's obvious that it's not." Appellant added, "I think you'd better read me my rights." Appellant formally was placed under arrest and handcuffed. Twenty-five minutes elapsed from the time appellant was stopped to the time of his arrest.

On cross-examination, Officer Larman stated that he stopped appellant because he was suspicious of him leaving a parking lot at that hour of the morning with a guitar and tape deck under his arms, and because he wanted to determine who appellant was and whether he owned the items. He testified that Officer Clark ran the tag number on the Chevrolet, and that it was not listed to anyone named Al. Officer Larman stated that he became highly suspicious of appellant after he noticed the "jimmy marks" on the Chevrolet wing window. In the view of the officers, although they never so told appellant, appellant had been free to leave until he admitted nonownership of the tape deck.

Appellant's argument in favor of suppression consists of two parts: (1) the officers lacked the requisite "specific and articulable facts which, taken together with ra-tional inference from those facts,"[3] justified the police intrusion here involved, and (2) the stop and detention, even if valid at their inception, became so extended in duration and of such a nature as to become in fact an arrest long prior to the formal arrest and prior to the existence of probable cause therefor.[4]

As we recognized in *Cooper v. United States*, D.C.App., 368 A.2d 554 (1977), *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), sustains the constitutional validity of certain temporary restraints in situations of street encounters on less than probable cause. *Terry* and its progeny[5] established two requirements to validate such intrusions: (1) specific and articulable facts plus rational inferences therefrom which reasonably warrant the intrusion, and (2) a reasonable relationship between the scope of the stop and questioning and the justification for their initiation. *Terry v. Ohio*, 392 U.S. at 21, 29, 88 S.Ct. 1868. In other words, "[s]tops as well as arrests must satisfy the Fourth Amendment['s] requirement of reasonable cause commensurate with the extent of the official intrusion." *Young v. United States*, 140 U.S.App.D.C. 333, 336, 435 F.2d 405, 408 (1970). The facts known to the officers must be evaluated by an objective standard—would the facts known to the officers warrant a reasonably cautious officer in his belief that his action was appropriate? *Terry v. Ohio*, 392 U.S. at 21–22, 88 S.Ct. 1868.[6] Our opinion in *Stephenson v. United States*, D.C.App., 296 A.2d 606 (1972), *cert. denied*, 411 U.S. 907, 93 S.Ct. 1535, 36 L.Ed.2d 197 (1973), gives further recognition to these requirements.

Measured by this objective standard, we are satisfied that the police conduct, at its inception, was entirely reasonable. Officers aware of a high incidence of auto larcenies

---

3. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

4. Appellant does not contest the existence of probable cause at the time of the "formal" arrest.

5. *See, e. g., Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), and *Unit-ed States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

6. For an incisive analysis of the *Terry* doctrine, see the dissenting opinion of Robinson, J. in *United States v. Wylie*, —— U.S.App.D.C. ——, 569 F.2d 62 (D.C.Cir. 1977).

in the area, confronted appellant leaving a dark parking lot in the early morning carrying a guitar case and tape deck. When interrogated about his whereabouts, appellant gave conflicting accounts thereof; he was unable to produce identification and gave conflicting reasons therefor. These factors known to the officers combined to justify the continued interrogation of appellant. Indeed, it is clear that *at least* until the time of appellant's entry into the police vehicle, the situation was totally lacking in any elements of duress other than those normally inherent in every street encounter between police and citizen. It was only upon appellant's entry into the police vehicle with the preceding pat-down that any claim of duress could conceivably be made. As we understand appellant's contention, he asserts that from at least this point forward, the duration and nature of the intrusion changed from a *Terry* stop to a formal arrest, and this because of such a character as to require probable cause to be consistent with the Fourth Amendment. However, where the facts ascertained during such an encounter gradually escalate toward probable cause, reasonable extension of the duration of the stop to await the outcome of further police investigation is justified. *Cooper v. United States, supra.* Evaluated by this standard, we are satisfied that the police conduct leading to the "formal" arrest remained at all times consistent with the Fourth Amendment. *See United States v. Childs,* D.C.App., 379 A.2d 1188 (1977).

Even if we were to conclude that appellant's presence in the police vehicle was nonconsensual and based on the officer's show of authority,[7] it would have been appropriate for the police officers to prolong the detention of appellant while they briefly continued their ongoing and escalating investigation of suspected larceny from an automobile. The facts known to the officers at the time appellant entered the car, while short of probable cause to arrest, did justify further brief detention and inquiry. *See Cooper v. United States, supra.* Rather

than constitutional violations, the record in this case discloses restrained, measured, and temperate responses to a challenging situation by police officers who, while remaining sensitive to constitutional limits, obtained probable cause leading to the arrest and ultimate conviction of appellant.

*Affirmed.*

---

**7.** However, the undisputed evidence was that it was at appellant's request that he entered the vehicle so as to be transported to obtain evidence of his bona fides and that he thereafter directed the journey from place to place for this purpose.