**UNITED STATES, Appellant,**

v.

**Gerald A. LEWIS, Appellee.**

**No. 84–101.**

District of Columbia Court of Appeals.

Argued Aug. 1, 1984.

Decided Jan. 16, 1985.

Robert H. Klonoff, Asst. U.S. Atty., Washington, D.C., with whom Joseph diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellant.

Frederick Sullivan, Washington, D.C., for appellee.

Before PRYOR, Chief Judge, and NEBEKER and ROGERS, Associate Judges.

ROGERS, Associate Judge:

The government appeals the motions court's order suppressing a yellow knapsack seized without a warrant from appellee's blue knapsack. In seeking reversal, the government contends the court erred in finding that (1) the yellow knapsack was not in plain view, (2) Officer Green did not have probable cause to arrest appellee at the time he discovered the yellow knapsack, and (3) the yellow knapsack would not have been inevitably discovered. Upon a review of the record, we hold that the motions court's factual findings are not clearly erroneous and find no error of law. Accordingly, we affirm.

I

The motions court found that a woman was assaulted on November 12, 1982, at approximately 11:40 a.m., in Rock Creek Park. Her assailant, a man, committed an indecent act upon her after dragging her into a wooded area of the park, and striking her several times in the face. He also stole her yellow knapsack and gold bracelet. A lookout was broadcast and appellee was stopped about fifteen to twenty minutes later about half a mile from the scene of the assault. Appellee's blue knapsack was searched and complainant's yellow knapsack was found inside. Appellee was returned in a police car to the scene where he was eventually arrested.[1]

Testifying at the hearing on the motion to suppress were Park Police Officer Lauro, to whom the complainant gave a description of her assailant, Metropolitan Police Officer Green, who first stopped appellee about half a mile from the scene of the attack, and appellee. Appellee disputed Officer Green's testimony about whether his blue knapsack was opened or closed and whether Green had taken anything out of his blue knapsack. After hearing the testimony and argument of counsel, the motions court found that when Green initially stopped appellee his blue knapsack was zipped shut and therefore the yellow knapsack was not in plain view; that Green either ordered appellee to remove the items from the blue knapsack or removed them himself; and that while appellee was not under arrest at that time he was at least under the supervision of the officer. The court also found that although there was reasonable suspicion to justify the stop, Green did not have probable cause to arrest appellee until Green discovered the yellow knapsack.[2] The court then concluded that

1. At the scene, the complainant, whose one eye was completely swollen shut and other eye was partially shut, failed to positively identify appellee. Appellee was placed in the back of a police cruiser and after Officer Green showed Officer Lauro the yellow knapsack, appellee was handcuffed and transported to the police station for "processing."

2. The court found:
"Now, [defense counsel] says in his memorandum that no judge would have issued an ar-

in order for the yellow knapsack to be admitted, it would have to determine whether the yellow knapsack would inevitably have been discovered, and to make that determination it had to find with substantial certainty that the police officers (based on their collective information at the scene) would have thought they had probable cause to arrest appellee had they not known about the yellow knapsack and would have in fact arrested him. The court ruled that it was not convinced that appellee certainly would have been arrested had the police not known about the yellow knapsack. Thus, it concluded that the government had failed to prove that the yellow knapsack would inevitably have been discovered.

## II.

■ The search of appellee's knapsack was conducted without a warrant and warrantless searches are per se unreasonable under the Fourth Amendment unless they fall within one of a few, carefully delineated exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *(John) Smith v. United States,* 435 A.2d 1066, 1068 (D.C.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982); *Jackson v. United States,* 404 A.2d 911, 918 (D.C.1979). The motions court made findings of fact and conclusions of law and determined that the evidence at issue here was not admissible under any exception to this rule. The motions court's factual determinations may not be disturbed unless they are clearly erroneous. *Brooks v. United States,* 367 A.2d 1297, 1302 (D.C.1976); D.C.Code § 17-305 (1981).

### A.

■ The motions court first determined that the yellow knapsack was inadmissible under the plain view exception to the warrant requirement. *See Texas v. Brown,* 460 U.S. 730, 736, 103 S.Ct. 1535, 1539, 75 L.Ed.2d 502 (1983); *Coolidge v. New Hampshire,* 403 U.S. 443, 468–69, 91 S.Ct. 2022, 2039–40, 29 L.Ed.2d 564 (1971). Officer Green testified that when he stopped appellee he asked him to place the blue knapsack he was carrying on the hood of the police cruiser and when appellee did so Green could see the yellow knapsack inside the partially opened knapsack. The motions court found as a fact that the blue knapsack was zipped shut and therefore Green did not see the yellow knapsack in plain view. One of the factors mentioned by the court as a basis for this conclusion was its view that a thief who knows a policeman is watching him would not leave the yellow knapsack visible.[3] The government contends that this "common sense" conclusion by the motions court was a conclusion of law, citing *United States v. Minick,* 455 A.2d 874 (D.C.) (en banc), *cert. denied,* — U.S. —, 104 S.Ct. 111, 78 L.Ed.2d 112 (1983) (Appellant's Brief at 17), and was incorrect.

Upon reviewing the record we conclude that *Minick, supra,* 455 A.2d at 880–81, is not dispositive. The motions court's plain view finding, *Lewis v. United States,* 379 A.2d 1168, 1170 (D.C.1977), was based primarily on its assessment of the demeanor and credibility of Officer Green and appellee whose testimony was in conflict. Bearing in mind that the motions court has heard the testimony and observed the witnesses, we cannot say that the motions court's resolution of conflicting testimony and factual findings lacked substantial sup-

---

rest warrant on that kind of description. There's no doubt about this.... I don't think you could say that he was probably the mysteriant [miscreant?] until the bag was open. So, I don't think there was probable cause to arrest and search at that time."

**3.** The evidence indicated that Green followed appellee for a block and a half in a marked police cruiser and that appellee was aware of Green's presence. Appellee then entered a store briefly and when he emerged with a soda Green motioned for him to come over to the cruiser. The court noted that it did not make sense for someone who knows he has just stolen a yellow knapsack and knows the police are following him to leave the yellow knapsack visible on top.

port in the evidence. *United States v. Alexander*, 428 A.2d 42, 50 (D.C.1981), D.C. Code § 17–305(a) (1981); *United States v. Lyon*, 348 A.2d 297, 299 (D.C.1975). While Officer Green testified the blue knapsack was partially unzippered, he was imprecise about key details, internally contradictory on some points and vague on others. Green changed his testimony about whether he pulled anything out of the blue knapsack, and initially failed to mention appellee's swollen hand and the scratches on his face and hand. Nor did Green include in his police report the details that he testified were of significance in his determination that appellee fit the lookout description and in his decision to stop him. Appellee testified that when Green asked him what was in the blue knapsack he told him clothes and took some clothes out, and when he was about to close the zipper Green reached in and pulled out the yellow knapsack. Accordingly, since there is substantial evidence in the record to support the motions court's findings, we affirm the trial court's ruling that the initial search of appellee's blue knapsack was illegal.

■ The court also found, and we agree, that there was articulable suspicion sufficient to justify an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See District of Columbia v. M.M.*, 407 A.2d 698, 701 (D.C. 1979). Officer Green observed appellee, who arguably fit the description broadcast in the lookout,[4] with mud and briars on his pant legs, in the same general vicinity as the offense; appellee appeared to slow down upon observing the officer and was perspiring. The court did not specifically find whether Officer Green observed scratches on appellee's hand and face and a swollen hand before he stopped him. How-

ever, even if Green did not notice the scratches there was enough to warrant further investigation.

■ At this point, Officer Green did not, however, also have sufficient grounds to search appellee's knapsack for evidence of a crime. *Terry, supra,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, is narrow in scope, *Dunaway v. New York*, 442 U.S. 200, 210, 99 S.Ct. 2248, 2255, 60 L.Ed.2d 824 (1979) ("Because *Terry* involved an exception to the general rule requiring probable cause, this Court has been careful to maintain its narrow scope.") *Terry* itself involved a limited, on-the-street frisk for weapons predicated by on-the-spot observation of the officer by patting down the outer garments; the police officer did not go underneath the outer garments until he felt the guns. The evidence before the motions judge did not provide a basis on which the court could find the officer would have been justified in believing appellee was armed. The complainant did not report her attacker had a gun or other weapon and Green testified he did not frisk appellee or have any reason to believe appellee was armed or posed a danger of his physical safety. Since appellee had put the knapsack on the hood of the car, the exigencies necessary for a *Terry* search for weapons, in the absence of probable cause to arrest, were not present. *Terry, supra,* 392 U.S. at 25–26, 88 S.Ct. at 1882 (An officer's search must be limited to what is necessary and is strictly circumscribed by the exigencies which justify the frisk).

### B.

■ The motions court further concluded that Officer Green did not have probable cause to arrest appellee when he originally stopped him. In making its probable cause

---

**4.** According to Officer Lauro, the broadcast described the assailant as a black male in his early twenties, approximately six feet tall, thin build, about 150 pounds, no facial hair, wearing a brown and tan checkered raincoat and a grey sweater. Appellee is 6'4¾" tall and weighed 209 pounds at the time, although the trial court commented appellee appeared lighter than that weight, and had a light mustache. When he was stopped by the police, he was wearing a "beige/greyish" sweater that was more brown than grey with a brown striped shirt underneath and blue jeans, and "white jogging shoes with blue trim" and was either carrying or had a tan jacket in his knapsack.

determination the motions court relied on the standard in *Texas v. Brown, supra,* 460 U.S. at 742, 103 S.Ct. at 1542–43 (a practical, nontechnical probability).

Appellee was on the outskirts of Rock Creek Park, which the court noted is quite large. Other people, including joggers, were in the park. Anyone who had been in any of the wooded areas of the park could have had burrs stuck to his pants. The court noted there were a number of coincidences but found they were insufficient in view of the significant differences in appearance (weight, height, facial hair, clothing, color of knapsack) between appellee and the lookout description, and the fact that appellee was not apprehended at the scene and there was no logical compulsion to conclude the assailant would be found where appellee was stopped. Thus, the court concluded that without the yellow knapsack, there was nothing conclusive to link appellee to the offense. *See United States v. Short,* 187 U.S.App.D.C. 142, 145, 570 F.2d 1051, 1054 (1978) (no probable cause since lookout description could fit many young people in the area and victim could not identify appellant; however, sufficient articulable suspicion for stop under *Terry*) (citing LaFave, *"Street Encounters" and the Constitution: Terry, Sibron, Peters and Beyond,* 67 MICH.L.REV. 39, 80 (1968)); [5] *cf. (John) Smith v. United States,* 435 A.2d 1066, 1069 (D.C.1981) (police had probable cause when, after returning suspects to scene for showup, they were positively identified). Although the case is close, we hold that there was insufficient evidence to constitute probable cause as to identity. *See Brooks, supra,* 367 A.2d at 1304 ("We are satisfied that the trial court gave proper consideration to the seriousness of the warrantless intrusion made by the officers. Its careful reasoning in the application of the exigent circumstances doctrine finds ample support in the extensive evidence taken at the pre-

trial hearing. We therefore find no reversible error...."); *see infra* note 6. In the absence of probable cause to arrest at the time Officer Green stopped appellee and searched the blue knapsack, the search cannot be justified on the grounds that it was incident to a lawful arrest. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *New York v. Belton,* 453 U.S. 454, 457–58, 101 S.Ct. 2860, 2862–63, 69 L.Ed.2d 768 (1981).

## C.

■ The motions court correctly noted that the officer was justified in detaining appellee and returning him to the scene of the crime for a show-up. *District of Columbia v. M.M., supra,* 407 A.2d at 701; *United States v. Short, supra,* 187 U.S. App.D.C. at 145, 570 F.2d at 1054; *United States v. Wylie,* 186 U.S.App.D.C. 231, 239–40, 569 F.2d 62, 70–71 (1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978). The question remained whether the yellow knapsack would inevitably have been discovered after appellee was returned to the scene. The motions court phrased the issue as whether there was a substantial certainty that the police officers would have ultimately concluded that they had probable cause to arrest appellee and would in fact have arrested him. The court concluded, under *United States v. Allen,* 436 A.2d 1303, 1310 (D.C.1981), that it could not be certain the officers would have arrested appellee had they not known about the yellow knapsack and thus the government had failed to carry its burden to show that the yellow knapsack would inevitably have been discovered after appellee was returned to the scene.

■ Although the United States Supreme Court had not yet decided *Nix v. Williams,* —— U.S. ——, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984), the motions court correctly applied the standard estab-

---

**5.** One commentator has noted, "[c]ourts have generally taken the position ... that an arrest may not be made upon a general description when the circumstances, including the lapse of time and size of the area being searched, are such that more than one person would likely fit that description." LaFave, *supra* at 80.

lished in that case. In *Nix,* the Supreme Court held that evidence which has been obtained illegally may nevertheless be introduced at trial "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means...." *Id.* Given the existence of the primary illegality (Green's illegal search of appellee's knapsack), the evidence must be suppressed unless the yellow knapsack *would* have been discovered by legal means and therefore would be admissible under the inevitable discovery exception. Thus, the first inquiry is whether appellee would, in fact, have been arrested. Only if that determination is made affirmatively is the second inquiry—whether the arrest would have been lawful because supported by probable cause—to be addressed. Having concluded that the government failed to prove that appellee would have been arrested, the motions court properly declined to reach the question of whether there was probable cause.

▆▆▆ The Supreme Court stated in *Nix* that "inevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings." *Id.* 104 S.Ct. at 2509–10 n. 5. The motions court determined that it was not certain that the police would have arrested appellee had they not found the yellow knapsack. The

court concluded that what the police said and did at the time did not amount to their thinking they had probable cause to arrest appellee.[6] The court also noted that while Officer Lauro claimed he would not have released appellee after he was brought back to the scene for the show-up, appellee was not formally arrested until after Lauro had looked inside the blue knapsack and saw the yellow knapsack.

▆▆▆ The government contends that the motions court imposed an improper burden of proof in making its findings. However, the government has confused the burden of proof—by a preponderance of the evidence—with that which must be proven—that the discovery was "inevitable" or "certain to occur." The motions court stated that it had to find that it could be substantially certain that the arrest would have occurred in the absence of the yellow knapsack. Although the court did not specifically state whether it was making that finding by a preponderance of the evidence, that is the ordinary burden of proof in suppression hearings, *see Nix, supra,* of which the court was aware, *see supra* note 2 (government failed to prove by a preponderance of the evidence), and there is no reason to assume that the motions court imposed a different burden of proof. The motions court stated that the substantial certainty to which it referred related to the inevitability of the discovery and not to the

6. The government contends that this finding by the court was refuted by Officer Lauro's testimony and therefore was without support in the evidence. However, it is for the motions court to assess the credibility and demeanor of the witnesses and make such factual findings. *United States v. Lyon, supra,* 348 A.2d at 299. The fact that Officer Lauro "felt [appellee] was the assailant" before discovering the yellow knapsack does not automatically require the finding, as the government contends, that based on this "feeling" Officer Lauro, an experienced police officer, would have arrested appellee because he was convinced he had probable cause to support the arrest. Similarly, the motions court viewed Lauro's testimony that he was not inclined to release appellee prior to the discovery as being based, at least in part, on "the way the question

was asked." The court found that these "feelings" and "inclinations" did not amount to a clear decision by the officers, based on the information they had without the yellow knapsack, that they had probable cause and therefore would arrest appellee. The court noted that their actions at the scene belied the contention that they would have arrested appellee without the illegally seized evidence. Similarly, their reports (written shortly after the arrest), which were also before the motions court as evidence, do not support that contention; Officer Lauro's testimony and report indicated that until the yellow knapsack was discovered, the police were still in the investigatory phase. Thus, we cannot find that the court's finding was clearly wrong. D.C.Code § 17–305(a) (1981).

burden of proof.[7] In any event, after *Nix*, the standard is clear—the discovery must be proven to be inevitable and the motions court's finding that the discovery was not "substantially certain" to occur is in accordance with that standard. We find no error by the motions court in its use of the "substantial certainty" test.

Accordingly, the judgment below is affirmed.

NEBEKER, Associate Judge, dissenting:

I begin with some fundamentals. A trial is a search for truth. Application of the exclusionary rule blocks that search and thus the truth. Sometimes the suppression of the truth by use of the rule does not work an injustice because the trial process finds the truth from other admissible evidence. In this case, however, the greatest injustice is done by the use of the rule; an injustice not only to society but also to the hapless victim who must see her assailant go unpunished. Proof of guilt to near certitude is being excluded. Moreover, it is the only proof that Lewis committed this degrading, senseless and violent act—rectal abuse by inserting a stick into this female victim.

The exclusionary rule is being applied in this case without regard to the nature of the police intrusion and the extreme consequences of suppression of this compelling, and only, evidence of guilt. *See Dickerson v. United States*, 296 A.2d 708 (D.C.1972) (Nebeker, J., concurring). In my view, the integrity of the exclusionary rule, if it is to remain viable for use in cases of real police abuse, requires the court to permit the use of crucial evidence on any reasonable and available legal theory. *See Vicks v. United States*, 310 A.2d 247 (D.C.1973) (Nebeker, J., concurring). Accordingly, and after due consideration of the positions taken by the parties, I would reverse this death knell order of suppression for the reasons which follow.

In resolving a case like this one, we cannot be a slave to a case-matching exercise in which we treat myriad factors in one case as setting a threshold or minimum for the next. *See United States v. Mason*, 450 A.2d 464, 466 (D.C.1982). Each past case has factors different from the one at hand. The court's role is to apply a rule of reason, not assume that because a precedent was based on certain factual elements it is thus inapposite or dictates a contrary result simply because one factor is lacking in the case at hand. *See Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 3478, 77 L.Ed.2d 1201 (1983), where the Court rejected a case-matching approach by the Michigan Court limiting *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to "only a limited pat-down search of a person." The Court applied a broader rule of reason to protective searches in "roadside encounters between police and suspects." *Michigan v. Long, supra*, 103 S.Ct. at 3480.

This is a roadside encounter case and thus Lewis, in commendable candor, does not dispute that Green had a reasonable basis upon which to stop and return him to the crime scene for a show-up. (Record at 54.) Lewis generally fit the description of the assailant and had mud on his pants and

---

7. The court stated, citing LAFAVE, SEARCH AND SEIZURE § 11.4, "[t]he necessary probability that the evidence would have been found anyway, according to LaFae [sic, LaFave] is the word 'would.' Not might, but would have been found and that requirement must be strictly adhered to...." The court's reference to New York law and the case of *People v. Payton*, 45 N.Y.2d 300, 313, 408 N.Y.S.2d 395, 402, 380 N.E.2d 224, 231 (1978), *rev'd on other grounds*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), also makes clear that the motions court was referring to the "substantial certainty" standard in relation to the ultimate fact which the government had to prove, and not to the burden of proof. In *People v. Payton, supra*, the New York Court of Appeals stated:

> In the first place the label 'inevitable discovery' is inaccurate and therefore misleading. The doctrine does not call for certitude as the literal meaning of the adjective 'inevitable' would suggest. What is required is that there be a very high degree of probability that the evidence in question would have been obtained independently of the tainted source. 45 N.Y.2d at 313, 408 N.Y.S.2d at 402, 380 N.E.2d at 231.

scratches and a swollen knuckle on one hand, suggesting recent violence. Thus, Green had an "articulable suspicion," *see, e.g., Wilkerson v. United States*, 427 A.2d 923, 925 (D.C.1981), that Lewis had committed the crime and was justified in taking him to the scene. This was a "reasonable extension of the duration of the stop to await the outcome of further police investigation." *Id.* at 926, quoting *Harris v. United States*, 382 A.2d 1016, 1019 (D.C. 1978).

The question that arises is whether, given the reasonableness of the return of Lewis to the scene, the search of the blue knapsack was reasonable.[1] It is well-settled that the Constitution prohibits not all searches, but rather those that are unreasonable. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960).

Given Officer Green's version of how he discovered the victim's knapsack, he could not have asserted an alternative rationale at the motions hearing at variance with his testimony. This court's inquiry, however, is not bound by Green's asserted but rejected version or his subjective state of mind or legal reasoning prior to the search. Rather, we must focus on whether it was objectively reasonable for him to conduct the search as the trial court found he did. *See, e.g., Harris v. United States*, 382 A.2d 1016, 1018 (D.C.1978); *Arrington v. United States*, 311 A.2d 838, 840 (D.C.1973); *Bailey v. United States*, 279 A.2d 508, 511 (D.C.1971); *Von Sleichter v. United States*, 267 A.2d 336, 339 (D.C.1970); *Coleman v. United States*, 137 U.S.App.D.C. 48, 58, 420 F.2d 616, 626 (1969) (Bazelon, C.J., concurring); *Payne v. United States*, 111 U.S.App.D.C. 94, 96, 294 F.2d 723, 725 (1961); *Bell v. United States*, 102 U.S.App. D.C. 383, 387, 254 F.2d 82, 86 (1958) (arresting officer's belief that arrest was for one offense but "legal lights in charge" decided the offense was something different.

"Would the arrest have been invalid? Of course not.").

In determining the reasonableness of the search of appellant's knapsack, we must "balance [the] intrusion on the individual's Fourth Amendment interests against [the] promotion of legitimate governmental interests." *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983) (quoting *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). When Green made his decision to return Lewis to the crime scene, he certainly could not have left the knapsack behind, as it might well have been stolen. Lewis would have a claim against the officer resulting from such a theft and might be inclined to provide false information about the knapsack's contents. *Id.* 103 S.Ct. at 2609 (inventory search of arrestee's bag deterred false claims and inhibited the theft or careless handling of items taken from arrestee).

In rejecting the reasonableness of Officer Green's search, the majority emphasizes the narrow scope of the *Terry* exception to the warrant requirement and asserts that any potential danger to Green ended when Lewis placed the knapsack on the hood of the car. Such a narrow reading of *Terry* is not required, as evidenced by the Court's language in the case itself.

> We need not develop at length in this case, however, the limitations which the Fourth Amendment places upon a protective seizure and search for weapons. These limitations will have to be developed in the concrete factual circumstances of individual cases.

*Terry v. Ohio, supra*, 392 U.S. at 29, 88 S.Ct. at 1884. And, in deciding whether an officer acted reasonably in a given situation, the crucial issue is whether a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, 88 S.Ct. at 1883.

---

1. Although the government did not frame its appeal in these terms, this court's authority is not limited by the way it chose to cast its arguments. *See March v. United States*, 362 A.2d 691, 697–98 (D.C.1976).

Here, Officer Green faced the prospect of transporting a suspect in a particularly violent and senseless crime along with a bag, the contents of which were unknown to him. His actions may therefore be deemed reasonable in searching it as a security measure. The Supreme Court has expressly recognized that "suspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed." *Michigan v. Long, supra,* 103 S.Ct. at 3480. Although Green stated that he was not afraid of Lewis and did not think Lewis was armed, the question remains whether an objective justification for the search existed. *See Payne, supra,* 111 U.S.App.D.C. at 96, 294 F.2d at 725. Whether Green actually feared that the knapsack contained weapons is unimportant, as the "need to protect against such risks arises independent of a particular officer's subjective concerns." *Illinois v. Lafayette, supra,* 103 S.Ct. at 2610 (citing *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973)).

Balancing the government's strong interest in the safety of police officers and the public interest in bringing this defendant to book against the tempered manner of the search, it is evident that the search was reasonable. We must accept as fact Lewis' version of the search. He testified that, "He [Green] asked me to take some of the stuff out of the bag so I took some of the stuff out of the bag and then he himself went into the bag and pulled out the knapsack." (Record at 125.) This search was far less intrusive than those conducted routinely in public buildings and airports where security personnel take possession of bags at the outset and rummage through them.[2] It was only after Lewis removed some items that the yellow knapsack came into view. When it did, the situation escalated to a point that it was then most reasonable to seize the yellow knapsack.

In its holding, this court fails to recognize an available ground upon which the search of the blue knapsack was justified. *See United States v. Johnson,* 182 U.S. App.D.C. 383, 391, 561 F.2d 832, 840 (1977). I again express "the hope that the only remaining reviewing authority will both have and seize the opportunity to reject the majority's" holding. *Crews v. United States,* 389 A.2d 277, 306 (D.C.1978) (Harris, J., dissenting), *rev'd, United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

---

2. Arguably, Green could have protected himself by placing the knapsack in the trunk of the scout car. But the reasonableness of his search did not turn on the existence of a less intrusive means of securing the knapsack. *Illinois v. Lafayette, supra,* 103 S.Ct. at 2610. Moreover, a pat-down of the knapsack which contained a number of hard, large articles, such as gym shoes and a radio, would not have sufficed as a security measure.