**DISTRICT OF COLUMBIA, Appellant,**

v.

**M.M., Appellee.**

**DISTRICT OF COLUMBIA, Appellant,**

v.

**J.F.H., Jr., Appellee.**

**Nos. 14242, 14244.**

District of Columbia Court of Appeals.

Argued Sept. 18, 1979.

Decided Oct. 29, 1979.

---

David P. Sutton, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed, and Richard W. Barton, Deputy Corporation Counsel, Washington, D. C., were on the brief, for appellant.

John F. Lillard, Washington, D. C., appointed by this court, for appellee M.M.

Silas J. Wasserstrom, Public Defender Service, Washington, D. C., with whom Richard A. Rosen, Public Defender Service, Washington, D. C., was on the brief, for appellee J.F.H., Jr. Joseph Brawner, Public Defender Service, Washington, D. C., also entered an appearance for appellee J.F.H., Jr.

Before KELLY, KERN and HARRIS, Associate Judges.

KERN, Associate Judge:

The government appeals from the trial court's order entered after a hearing which suppressed (a) certain tangible evidence seized from appellees and (b) an identification of them made at the scene of the crime by an eyewitness because their Fourth Amendment rights had been violated.

The record of the suppression hearing discloses that the two complainants were attacked from the rear and robbed by two assailants early in the morning of September 20, 1978, in the 2700 block of Adams Mill Road near Columbia Road. The victims did not see their attackers but a resident of a nearby building saw them and called the police. The officer responding to the scene tended first to the injured complaining witnesses and then obtained from the eyewitness an account of what she had seen and a description of the robbers. This officer relayed that description to police central communications, which in turn broadcast a lookout for two persons described as black, male, young (approximately 15 to 19), running east on Adams Mill Road toward Columbia Road and one wearing a white or light-colored jacket and the other a bright plaid shirt or jacket.

A police officer on duty in his cruiser at 14th and Harvard Streets received the lookout and proceeded along 14th Street to Clifton Street where he observed appellees who in his judgment matched the description of the two robbers. They were about one mile from the scene of the crime and some 25 minutes had elapsed since the robbery's occurrence. The officer informed them that they matched the description of two men who had earlier committed a robbery and advised that he would transport them back for viewing by a witness at the scene of the crime. Just before placing them in his cruiser for transport to the scene for a viewing by the eyewitness, he frisked them for weapons and then looked into a bag one of the appellees was carrying and discovered a camera.

When appellees arrived back at the scene, the witness identified one appellee as the youth she had seen "hovering" over the victims and the other appellee as wearing *then* the kind of outer garment she had seen on the other assailant some minutes earlier while the crime was in progress. During the transport of appellees to the scene, the officer had observed them switch jackets in an apparent effort to confuse the eyewitness at the subsequent showup. We are persuaded that given the eyewitness identification of appellees as the robbers and their jacket-switching on the way back to the scene in the cruiser thereby evidencing guilt, *see United States v. McKinley,* 158 U.S.App.D.C. 280, 485 F.2d 1059 (1973), there was probable cause to arrest appellees at the scene of the crime.[1]

The trial court, however, concluded that when the officer stopped appellees at 14th and Clifton Streets and placed them in his cruiser to return them to Adams Mill Road for viewing, this constituted an arrest for which there was no probable cause. The court, accordingly, suppressed as evidence the jacket one of the appellees was wearing, the camera recovered from them, an incriminating statement made by one of the appellees and the on-the-scene identification of appellees by the eyewitness—all on the theory they flowed directly from the unlawful arrest and therefore must be suppressed as fruit of the poisoned tree.

Even if we were to agree with the trial court that at the moment the officer stopped appellees and asked them to return to the scene of the robbery because they fit the description of the two robbers he had no probable cause to arrest them, we are not persuaded that this officer should have simply shrugged his shoulders and allowed appellees to proceed on their way. *See Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The government at the suppression hearing expressly urged the court to uphold the police action

---

1. There was testimony (Record at 19, 48), that after the eyewitness viewed appellees on the scene the officers examined the camera and discovered on it certain markings which enabled them to trace its ownership to one of the victims. The radio broadcast had not mentioned what items had been taken during the robbery. (Record at 40.)

at 14th and Clifton Streets on the ground it was "an investigatory stop premised on reasonable suspicion and not a probable cause arrest." (Record at 43.) This court recently pointed out that "certain temporary restraints in situations of street encounters on less than probable cause" are constitutionally valid provided "specific and articulable facts . . . warrant the intrusion" and there exists "a reasonable relationship between the scope of the stop and questioning and the justification for their initiation." *Harris v. United States,* D.C.App., 382 A.2d 1016, 1018 (1978). *See United States v. Short,* 187 U.S.App.D.C. 142, 145, 570 F.2d 1051, 1054 (1978) ("The fact that there was no reasonable basis for an arrest does not mean that the police officer could not take action on the basis of the police radio run. When he saw the appellant he had a reasonable, articulable suspicion that the appellant might be connected with the crime, and this was sufficient to warrant an investigative stop under *Terry* [*v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).] Pursuant to such a stop the officer was free to take the appellant to the nearby scene of the burglary for possible identification . . ..."); *United States v. Wylie,* 186 U.S.App.D.C. 231, 569 F.2d 62 (1977) (compelled return of defendant to scene of the crime upon less than probable cause was justified as an investigative stop under *Terry v. Ohio, supra* ).

■ Here, the facts that (1) appellees were wearing jackets identical to or closely approximating the jackets the robbers were described in the lookout as wearing, and (2) appellees were only a mile away from the robbery about 25 minutes after it had oc-

curred, constituted articulable circumstances to justify the officer stopping and then detaining them. *In re J.G.J.,* D.C.App., 388 A.2d 472, 474 (1978) ("The similarities between the radio-run description and the appearances of appellee and his companion, together with their proximity to the scene, justified the initial stop. We have never required precise correlation between a victim's description and the actual appearance of a suspect.").[2]

■ The issue then becomes whether the officer's transport of appellees from 14th and Clifton Streets to Adams Mill Road for the purpose of a viewing by the eyewitness to the robbery was an unreasonable intrusion.[3] We think not, given the brief period of time consumed in the transport, the proximity of the place of the stop to the scene of the crime, and the purpose of the transport, *viz.,* identification by a known eyewitness to a confirmed robbery. *Harris v. United States, supra; Franklin v. United States,* D.C.App., 382 A.2d 20 (1978); *Carey v. United States,* D.C.App., 377 A.2d 40 (1977); *Cooper v. United States,* D.C.App., 368 A.2d 554 (1977).

■ One last aspect of the police action challenged in this case requires discussion. Appellees point to the fact that before the officer placed appellees in his cruiser to transport them back to the scene of the crime for viewing by the eyewitness, he not only frisked them but also felt and then looked into the paper bag one of them had been carrying. The officer testified that he had done so for his own protection before placing them into the vehicle, *see United States v. Dyson,* D.C.App., 277 A.2d 658

---

**2.** *See United States v. Thornton,* 582 F.2d 993 (5th Cir. 1978) (stop by police upheld upon basis of description of a black male wearing a brown leather jacket and the person stopped was carrying a brown leather jacket near scene of crime); *United States v. Coades,* 549 F.2d 1303 (9th Cir. 1977) (stop upheld upon description of two male Negroes moving in a certain direction and one wearing a leather jacket when two such persons were seen a half-block in that direction); *State v. Sadler,* 40 N.C.App. 22, 251 S.E.2d 902 (1979) (investigative stop valid where description in lookout was of hat, pants, shirt and sunglasses and person stopped had similar pants, shirt and sunglasses).

**3.** We reject appellees' contention that *Dunaway v. New York,* — U.S. —, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), is applicable to the instant case. There, the defendant was taken to the police station and placed in its interrogation room for questioning without probable cause. The Court concluded that this governmental intrusion "was in important respects indistinguishable from a traditional arrest" and hence went beyond what *Terry* permits. Here, the record reflects police action of detaining prime criminal suspects *on the street* until identification could be made.

(1971), but he admitted that when he touched the bag he felt a camera inside. Appellees argue that when he nevertheless proceeded to look in the bag and remove the camera this action amounted to an unlawful seizure because it was not incident to a valid arrest (probable cause was lacking) and not justifiable on self-protection grounds as a *Terry* frisk since he had already guessed by its shape and "feel" it was a camera. Accordingly, appellees contend that the camera at least should be suppressed, even were we to reverse the trial court's suppression of the plaid jacket, the identification of appellees and the incriminating statement one made at the scene of the crime. In sum, they seek to distinguish the "seizure" of the camera, which occurred at the scene of the stop, from the other evidentiary items which came into possession of the police at the scene of the crime.

First, it is not clear from the record whether the officer returned the camera to appellees at the scene of the stop or kept possession. (Compare Record at 19, 48, 54–55 with Record at 36.) Second, we are unwilling to restrict an officer making a *Terry* frisk from looking into a bag of a suspect after he has felt it but before he places that person in his vehicle for transport. Third, since appellees were continuously under restraint from the time they were stopped at 14th and Clifton Streets until they were formally arrested at the scene of the crime in the 2700 block of Adams Mill Road, we conclude there was the requisite "actuality" of an inevitable discovery of the camera by the search incident to their arrest, as contrasted with the speculation and ambiguity we condemned in *Crews v. United States*, D.C.App., 389 A.2d 277, 295 (1978) (en banc), *cert. granted*, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979).

The suppression order is reversed and the case remanded for further proceedings.

*So ordered.*