THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STANLEY LIPPERT, Defendant-Appellant.

Third District    No. 80-125

Opinion filed November 26, 1980.—Rehearing denied February 10, 1981.

STENGEL, J., dissenting.
BARRY, J., specially concurring.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from an order of the circuit court of Fulton County finding the defendant, Stanley Lippert, guilty of armed robbery and sentencing him to a six-year term of imprisonment. About 11 p.m. on November 15, 1979, Fulton County Deputy Sheriff Daniel Dugan received a call concerning an armed robbery on the Liverpool Blacktop in Fulton County. He immediately went to the Riverview Inn in Liverpool

and met with the victims, Mr. and Mrs. Raymond Morse and Mr. and Mrs. Charles Scott. The four told the officer they were driving north on the Liverpool Blacktop leaving Liverpool when their car broke down. A car containing four males stopped and attempted to help them. A short time later, one of the four males came over with a rifle, pointed it at the Morses and Scotts and demanded their money. The four males then drove off in a northerly direction.

The Morses and Scotts were able to describe two of the assailants as follows: one had medium length blond hair and was about 5 foot, 11 inches tall, and another had bushy brown hair and a blue coat. Officer Dugan told the couples to wait at the hotel, and he checked out the area. Dugan drove north on the Liverpool Blacktop, proceeding through what he termed a "desolate" area of farmland between Route 24 and Liverpool. He was advised by radio that another car was coming up behind him driving north. He pulled off the road, backing into a driveway with his headlights pointed toward the road. A car drove past, containing two white males whom Dugan testified matched the descriptions given him earlier by the Morses and Scotts. He pulled the car over to the side of the road and had the driver, defendant, and the passenger, Bill Long, step out. After the defendant and Long were frisked they were transported back to the Riverview Inn for identification. En route, Dugan read the defendant his rights and then questioned him about the robbery. At the Inn, Mrs. Morse identified both the defendant and Long as being involved in the robbery. After the identification, the defendant was handcuffed and the officer asked him about his involvement with the robbery. Defendant responded that Long and Darrell Brazee had performed the robbery and he had just sat in the car. He named the fourth person as being Richard Sale. Brazee and Sale were apprehended, arrested and transported with the defendant to the county jail. Within an hour and a half after being picked up, defendant and Sale gave handwritten statements admitting their involvement in the robbery. The next day they made further statements regarding their involvement.

Defendant made a pretrial motion to suppress his statements and other evidence on the ground that they were fruits of an illegal detention and that the statements were involuntary and were taken in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The trial court, after a hearing, found that Officer Dugan had "probable cause to stop" the defendant's car and that all statements by the defendant and Richard Sale were voluntary and in compliance with *Miranda*. The court therefore denied the motion to suppress.

The defendant waived a jury trial and proceeded to a bench trial together with co-defendant Richard Sale. Defendant was found guilty and sentenced to a six-year term of imprisonment. On appeal, defendant

raises two issues: (1) whether the trial court improperly denied the defendant's motion to suppress the evidence; and (2) whether the defendant was proved guilty beyond a reasonable doubt.

We initially discuss whether the trial court improperly denied the defendant's motion to suppress. Defendant's argument consists of two parts. First, he contends that the initial stop and detention of the automobile defendant was driving was not a justifiable *Terry* stop under the standards promulgated in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Second, defendant contends that the officer's forcing the defendants to return to the Riverview Inn constituted a seizure which was impermissible under the fourth amendment because there was a lack of probable cause. The State argues that the initial stop was a justifiable *Terry* stop and that, although there was no probable cause, transporting the defendant back to the Riverview Inn was permissible as part of the *Terry* stop. We need not decide whether or not the original stop of the car was a justifiable *Terry* stop because we find that the transportation of the defendant to the Riverview Inn in the absence of probable cause was not permissible as part of a *Terry* stop.

In *Terry v. Ohio*, the Supreme Court held that there may be a brief, on-the-spot investigatory stop of a person on the street and a frisk for weapons without probable cause, so long as the police officer making the stop is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. (392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1879-80.) In Illinois, the *Terry* exception to the probable cause requirement for detention has been codified in section 107—14 of the Code of Criminal Procedure (Ill. Rev. Stat. 1979, ch. 38, par. 107—14), which reads:

"Temporary Questioning without Arrest. A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense * * * and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped."

In determining the permissibility of transporting the defendant back to the hotel, the occurrences in the instant case must be split into two separate time frames—the occurrence leading up to the *Terry* stop, and what happened after the stop. After the stop is made and the suspect has been questioned and frisked for weapons, one of two things can happen. First, the officer can find that there is probable cause, in which case the officer can arrest the suspect. Second, the officer can find there is not probable cause. In the instant case the defendant contends, and the State

concedes, that at the time the officer transported the defendant back to the hotel, probable cause did not exist.

■■ The issue, therefore, is, in the absence of probable cause may an officer continue to detain a suspect and transport him from the scene of the stop to another place for purposes of identification and further questioning. We hold that he may not.

This holding is based on two factors. First, a natural reading of the statute codifying *Terry* in Illinois prohibits transporting the suspect under the guise of a *Terry* stop. The statute specifically states that detention and questioning under a *Terry* stop must be conducted in the vicinity of where the suspect was stopped. Transporting the suspect miles back to the hotel for identification and further questioning simply cannot be considered detention and questioning within the vicinity of the stop. Therefore, the statute clearly prohibits such transportation where there is no probable cause, and the detention is simply a *Terry* stop.

In addition to the statute, such a prohibition is necessary for policy reasons. In *Terry*, the court held that a limited intrusion on a person's liberty is permissible only under certain, limited circumstances. To force a person to accompany an officer to a place miles away for identification and further questioning is a much more severe curtailment of the person's liberty, indistinguishable for all practical purposes from an arrest. No support for such a severe curtailment of a person's liberty in the absence of probable cause can be found in *Terry*.

The State argues strenuously that *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448, is authority for the argument that transporting the suspect for identification is permissible as part of a *Terry* stop. Such an argument misinterprets the holding in *Attaway*. In *Attaway*, a police officer received a radio communication that an armed robbery was in progress. He stopped two black males who generally fit the broadcast description and decided to take them back to the scene of the crime, where they were identified as the robbers. The appellate court held that the trial court properly denied the defendants' motion to suppress. However, far from stating that returning the defendants to the scene of the crime was permissible in the absence of probable cause under a *Terry* stop, the appellate court stated that there was probable cause for believing the defendants had committed the armed robbery and that a warrantless arrest was therefore justified. In contrast, in the case at bar the State concedes the absence of probable cause.

■■ Having held the detention of the defendant was impermissible in the absence of probable cause, we must decide what evidence is suppressible as the fruit of the illegal detention. Defendant argues that the out-of-court identification, the statements and confessions by the defendant and Sale

and the in-court identification must be suppressed. The State concedes that the out-of-court identification and the statements and confessions by the defendant and Sale were suppressible but contends the in-court identification should not be suppressed. We believe the State is correct and the in-court identification is not suppressible under the authority of *United States v. Crews* (1980), 445 U.S. 463, 63 L. Ed. 2d 537, 100 S. Ct. 1244.

Our holding in the first issue obviates discussion of the defendant's second issue. For the aforementioned reasons, the order of the circuit court of Fulton County is reversed and remanded for a new trial.

Reversed and remanded.

Mr. JUSTICE STENGEL, dissenting:

Because I believe that the initial stop of the car defendant was driving was justified under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and that the police officer required no further justification to transport defendant to the Riverview Inn for identification by the victims, I respectfully dissent.

The majority does not decide the propriety, under *Terry*, of the initial stop. A cursory consideration of that issue is necessary. At 11 p.m. on November 15, 1979, Officer Dugan received a radio report about an armed robbery committed on the Liverpool Blacktop, a country road which passes through an area of farmland between Liverpool and Route 24. After obtaining a general description from the victims of the robbers (one had bushy brown hair and a blue coat, and another stood 5 feet, 11 inches tall, and had medium length blond hair), Dugan drove north on the blacktop to check out the area of the robbery. Dugan testified there was little traffic on the blacktop that night. About one-half hour after the robbery, he observed two individuals matching the general description driving north together on the blacktop. Certainly, sufficient specific and articulable facts were available to justify the limited intrusion of a *Terry* investigative stop. See *People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209; and *People v. Garza* (1976), 44 Ill. App. 3d 30, 357 N.E.2d 1264.

The more substantial question presented by this appeal is whether the transportation of defendant to the Riverview Inn for the showup was part of the investigatory stop justifiable under *Terry*, or whether it was, as the majority states, for all practical purposes indistinguishable from an arrest and justifiable only by probable cause. In *District of Columbia v. M.M.* (D.C. App. 1979), 407 A.2d 698, a police officer observed two individuals matching the general description of robbery suspects about a mile from the scene of the crime and 25 minutes after its occurrence. He

stopped them and transported them back to the crime scene where they were identified by an eyewitness. The trial court suppressed the on-the-scene identification, as well as other evidence, on the theory that "when the officer stopped [defendants] * * * and placed them in his cruiser to return them to [the crime scene] for viewing, this constituted an arrest for which there was no probable cause." (407 A.2d 698, 700.) The reviewing court reversed, concluding that the initial investigatory stop was proper under *Terry*, and that the subsequent transportation of defendants to the crime scene did not require probable cause. In reaching the latter conclusion the court distinguished *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 824, 99 S. Ct. 2248, as follows:

> "There, the defendant was taken to the police station and placed in its interrogation room for questioning without probable cause. The Court concluded that this governmental intrusion 'was in important respects indistinguishable from a traditional arrest' and hence went beyond what *Terry* permits. Here, the record reflects police action of detaining prime criminal suspects *on the street* until identification could be made." 407 A.2d 698, 701 n.3.

In the case under review Officer Dugan testified that the Riverview Inn where defendant was taken for the showup was only 2 or 3 miles from where the initial stop took place. As in *M.M.*, the showup was part of the investigatory stop. Given the rural nature of the area, the Riverview Inn was certainly "in the vicinity" of the initial stop. (See Ill. Rev. Stat. 1979, ch. 38, par. 107—14. See also my opinion in *People v. Herron* (1980), 89 Ill. App. 3d 1048, 412 N.E.2d 1365.) In my view, defendant was not arrested until after he was identified by Mrs. Morse at the Riverview Inn.

Our supreme court has on several occasions upheld prompt identifications of suspects by witnesses or victims near the scene of the crime. As stated in *People v. McKinley* (1977), 69 Ill. 2d 145, 153, 370 N.E.2d 1040, 1043, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1623:

> "The procedure tends to insure accuracy, not bring about misidentifications. It 'fosters the desirable objectives of fresh, accurate identifications which may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing offender while the trail is fresh.' [Citation.]"

Regrettably, under the majority opinion in the instant case, the usefulness of the showup procedure will be unnecessarily curtailed.

For the reasons stated above, I would affirm the judgment of the Circuit Court of Fulton County.

Mr. JUSTICE BARRY, specially concurring:

I agree with the result reached by Justice Stouder in this cause to reverse and remand, but for reasons different from those he expressed in his opinion. Accordingly, I specially concur.

Although Justice Stouder suggests no need to discuss the question of whether the initial stop of the defendant's car was proper under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, I believe that this issue should be addressed before the propriety of the defendant's continued detention under *Terry* can be considered.

"A stop must be justified by specific facts, which, when taken together with rational inferences from those facts, reasonably warrants an intrusion into the privacy of a person. The objective determination to be made is whether the facts available to the officer at the moment of the stop warrant a person of reasonable caution to believe that the action taken was appropriate. (*People v. Sanford* (2nd Dist. 1976), 34 Ill. App. 3d 990, 341 N.E.2d 453.) The officer must have more substantial facts than would support a mere hunch, yet less substantial than those necessary to support a finding of probable cause to arrest the defendant. *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537." (*People v. Gunderson* (1978), 66 Ill. App. 3d 516, 522, 383 N.E.2d 1296, 1301.)

Clearly, at the time Deputy Sheriff Dugan made the initial stop of the defendant's car the facts known to him warranted his decision to make an investigative stop. The defendant and his companion, Bill Long, fit the descriptions of two of the perpetrators that were provided by the victims, there was no other traffic on this desolate, rural road at a late night hour, and the stop was made approximately three miles from the scene of the crime and within about a half hour of its commission.

However, although the initial stop was proper under *Terry*, contrary to Justice Stengel's position I do not believe that *Terry* and its subsequent codification (Ill. Rev. Stat. 1979, ch. 38, par. 107—14) sanction the continued detention of the defendant prior to his identification at the restaurant by the victims. Following the initial stop by Deputy Sheriff Dugan the defendant was transported, without any consent indicated, to the Riverview Inn some three miles away in the back seat of Dugan's squad car. This detention more closely resembles the custodial type of detention indicative of an arrest that can only be effectuated with probable cause than it does the brief, limited, at-the-scene intrusion upon the sanctity of the person based upon reasonable suspicion that is permissible under *Terry* and our current statute permitting temporary detention "in the vicinity of where the person was stopped." (Compare *District of Columbia v. M.M.* (D.C. App. 1979), 407 A.2d 698.) Conse-

quently, probable cause must have formed the basis of Dugan's decision to detain the defendant.

If Deputy Sheriff Dugan possessed probable cause to arrest the defendant at the time of the initial stop, there would be no question that he would be justified in transporting the defendant to the scene of the crime for a possible identification by the victims. (*People v. McKinley* (1977), 69 Ill. 2d 145, 370 N.E.2d 1040, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1623; *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448.) However, it becomes evident after a detailed reading of the State's brief in this case that the State relies entirely on a *Terry* extension theory to justify Deputy Sheriff Dugan's actions and in so doing fails to challenge ("concedes" according to Justice Stouder) the defendant's assertion that there was no probable cause to arrest the defendant at the time of the initial stop. Because the trial court found merely that there was "probable cause to *stop*" (emphasis added), and the State chooses not to argue that there were sufficient facts present at the time of Dugan's initial stop to provide probable cause to arrest the defendant, I believe that the probable cause to arrest issue cannot now be considered by this court.

For the foregoing reasons, I agree with Justice Stouder that the fruits of the defendant's illegal detention (the out-of-court identification and confession) should have been suppressed. The refusal of the trial court to do so was reversible error and necessitates a new trial.