THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
DONALD McCLANAHAN, Defendant-Appellee.

Fourth District  No. 4—89—0425

Opinion filed November 30, 1989.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

The State appeals the order of the trial court granting defendant's motion to suppress evidence. The State alleges that the trial court incorrectly found that no probable cause existed to justify the search of defendant's automobile.

We disagree and affirm.

On September 2, 1988, defendant Donald McClanahan was arrested and charged with the offenses of possession and delivery of a controlled substance (Ill. Rev Stat., 1988 Supp., ch. 56½, pars. 1402(b), 1401(b)(2)) and unlawful use of a weapon (Ill. Rev. Stat. 1987, ch. 38, par. 24—1(a)(4)). Defendant filed a motion to suppress evidence, alleging that the search of his automobile prior to his arrest was in violation of his fourth amendment rights. The court ruled that, although the officers had probable cause to stop defendant's automobile, they were without probable cause to search it. As a result, the court granted defendant's motion to suppress the handgun found within the vehicle and the controlled substances found on the defendant. The controlled substances were found after defendant was placed under arrest because of the handgun found in the vehicle.

Testifying for the State at the suppression hearing were Ralph Caldwell (Caldwell) and Richard Wiese (Wiese), the two Springfield police officers who were present at defendant's arrest. Caldwell testified that on September 2, 1988, at approximately 10 p.m., he was investigating an armed robbery that had occurred a few minutes earlier. After learning the description of the armed robbers from other officers investigating that armed robbery, Caldwell advised them that the description fit Michael Lipscomb (Lipscomb) and Rochelle Williams (Williams).

Fifteen minutes later, Caldwell went to Lipscomb's residence and knocked on his front door. No one answered. Caldwell then went into Lipscomb's backyard to speak to Wiese when a vehicle pulled into the front driveway. Caldwell observed at least two occupants in the vehicle, but could not identify who they were or even whether they were men or women. Caldwell testified that he saw the automobile back out of the driveway at a fast pace. He then ran to his police car, turned it around, and chased the vehicle.

Caldwell testified that he had difficulty in catching up to defendant's car because defendant was traveling at a high rate of speed. He chased the vehicle for about 10 to 12 blocks because the car looked

"awful suspicious." Caldwell also testified that he pulled the car over because he thought that Lipscomb was in the car.

After Caldwell stopped defendant's car, he radioed dispatch, approached the vehicle, and spoke with defendant, who remained in the driver's seat. Caldwell saw no one else in the car. He asked defendant for his driver's license and found the license to be valid. While defendant was giving Caldwell his license, Caldwell asked defendant where "Mike" was. Caldwell testified that defendant said, "Mike who?" Caldwell then stated that he told defendant that "Mike" was Michael Lipscomb. Defendant then answered Caldwell and told him that Lipscomb had told him "to get out of there," and that defendant had dropped him off.

It was at this point that Caldwell asked defendant to step to the rear of his car. As Caldwell was running checks on defendant, Wiese walked up to the driver's side of defendant's automobile, entered it, searched it, and found a gun. Defendant did not consent to a search of his car. Defendant was then placed under arrest, told to put his hands on the car and searched. Caldwell recovered $100 and cocaine from a pouch that defendant was holding. Defendant told Caldwell that the gun and cocaine were not his, that they were "Mike's." Caldwell did not have the results of the check until "everything was over." No warrants were out on defendant, and no tickets were issued for any violations.

Wiese corroborated much of Caldwell's testimony. Wiese testified that he also went to Lipscomb's house 10 to 15 minutes after being present at the scene of the armed robbery because Caldwell knew the description of the armed robber to match that of Lipscomb. Wiese further testified that while he was talking to Caldwell in the backyard, defendant's car pulled into Lipscomb's driveway and shined its headlights on the two officers. Wiese observed that the car immediately backed out of the driveway and drove away. He also noticed that the car seemed to pull out of the driveway faster than normal. Wiese followed Caldwell and indicated that he had difficulty in catching up to both defendant and Caldwell. Wiese stated that he was driving pretty quickly and only caught up to them after Caldwell had defendant's vehicle stopped.

Wiese went on to testify that defendant had gotten out of the driver's side of the car and was standing right by the door when Wiese walked up to the vehicle. Wiese testified that Caldwell told him that defendant had told him that Lipscomb was in the car with him. Then Wiese searched the driver's area of the car and found a gun under the front driver's seat. He said that he searched the car because

Lipscomb matched the description of the armed robbery suspect and defendant stated that Lipscomb had been in the car with him. Wiese had no permission to search the vehicle nor a search warrant. After the gun was pulled out of the car, defendant was placed under arrest and searched. The rest of Wiese's testimony matched Caldwell's.

The defendant testified that he was driving his car when he picked up a black male at the corner of Martin Luther King Drive and Capitol Avenue. Defendant indicated that he did not know who the person was. In fact, defendant testified that he had never even heard of Michael Lipscomb.

Defendant testified that the man got in his car and sat in the front passenger seat with a book-bag shoulder pouch in his possession. Defendant gave the man a ride to his house as the man pointed directions to it. As defendant drove into the man's driveway, his headlights shone on two uniformed officers in the backyard. The man told him to leave, so he did, and defendant drove 5 to 15 feet around the corner to let the man off. The man got out of the car and left the pouch and revolver in it.

Defendant testified that he first saw the revolver when he let the man off and the man had put the revolver under the passenger seat. When stopped by the police officers, defendant did not tell them that someone had put a gun under the front seat.

Contrary to the police officers' testimony, defendant testified that there was nothing unusual about his driving when he left the driveway of Lipscomb's house. He also said that he did not speed. Defendant further testified that he was inside his car when the police stopped him and asked him for his driver's license. Defendant said that he sat still until Caldwell told him to get out of his car. Defendant then got out of his car and stood beside the driver's door.

Defendant testified that the second police officer came soon after, and the first police officer told the second police officer to search defendant's car. He gave no consent to search the automobile nor was he told that he was under arrest. Defendant testified that after the second officer found the gun under the passenger seat, the first officer told defendant to put his hands against the car and searched defendant. The officers took the pouch found on defendant, unzipped it, and examined its contents. Defendant testified that the pouch had been left on defendant's seat, and when defendant was asked to get out of the car, defendant took the pouch with him.

Based on the above facts, the trial court granted defendant's motion to suppress evidence. Even though the trial court found the police acted appropriately in stopping the vehicle, the court found no

probable cause for the police to search it. The court concluded that there was no probable cause to believe that evidence of a crime would be contained in the vehicle after the police officers determined that neither Lipscomb nor Williams was in the car and that defendant was not suspected of being involved in the armed robbery. In addition, the court found that the weapon was not in plain view and that defendant was not subject to arrest before the vehicle was searched.

Further, the court found that defendant's vehicle was searched on a "hunch and a hope." No evidence was presented to show the vehicle was in any way involved in the crime.

■■ On a motion to suppress evidence, the defendant has the burden of proof to make a *prima facie* showing that the evidence was obtained by an illegal search and seizure. (*People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898, 899.) A reviewing court will not reverse the trial court's finding on a motion to suppress unless the finding is manifestly erroneous. *People v. Galvin* (1989), 127 Ill. 2d 153, 162, 535 N.E.2d 837, 841; *People v. Binder* (1989), 180 Ill. App. 3d 624, 627, 536 N.E.2d 218, 220.

In its brief, the State contends that the trial court erred in granting defendant's motion to suppress evidence. In support of its argument, the State maintains that the investigating officers had authority to conduct a search of defendant's vehicle under *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, and subsequent cases. In the alternative, the State argues that the search for weapons was legal under the authority granted in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and subsequent cases.

■ The State argues that under *Carroll*, probable cause for a search arises when circumstances known to the searching officer reasonably support the conclusion an automobile contains contraband. However, this probable cause determination must be based on objective facts that would justify the issuance of a warrant, not merely on the subjective good faith of the officers. (*Carroll*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280.) The State further argues that the officers' search of defendant's automobile is justified because the circumstances which constitute probable cause to search a particular automobile for particular articles are often unforeseeable and a car is readily moveable. (*Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975.) *Cardwell v. Lewis* (1974), 417 U.S. 583, 41 L. Ed. 2d 325, 94 S. Ct. 2464, and *United States v. Rivera* (7th Cir. 1987), 825 F.2d 152, *cert. denied sub nom. Robles v. United States* (1987), 484 U.S. 979, 98 L. Ed. 2d 492, 108 S. Ct. 494, are also cited

by the State for the same proposition. However, none of these cases diminishes the initial requirement of probable cause to justify the search of defendant's automobile.

In the alternative, the State argues that under *Terry* and *Michigan v. Long* (1983), 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469, the police were allowed to search defendant's car in the absence of probable cause based upon a reasonable belief that the defendant posed a danger to the investigating officers. Here, however, the police had no reason to suspect that defendant was armed and dangerous, nor did they testify to any such concern. In addition, defendant posed no danger to the officers since he was not in his car at the time his vehicle was searched.

■ The general rule, recently reiterated in *Binder*, is that police must obtain a search warrant prior to searching a motor vehicle unless the circumstances fall within an exception to the warrant requirement. (*Binder*, 180 Ill. App. 3d at 627, 536 N.E.2d at 220.) One such exception is if police have probable cause to believe the vehicle was used in or contains evidence of a crime. (*United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157; *Binder*, 180 Ill. App. 3d at 627, 536 N.E.2d at 220.) Given such a finding of probable cause, the permissible scope of a warrantless search may be as broad as that which a magistrate could have legitimately authorized by a search warrant. *Binder*, 180 Ill. App. 3d at 627, 536 N.E.2d at 220-21.

Although *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605, reversing *People v. Lippert* (1980), 93 Ill. App. 3d 273, 415 N.E.2d 1064, involves an arrest rather than a search and seizure, the case sheds some light on the probable cause issue. In *Lippert*, a police officer observed an automobile containing two individuals matching descriptions given to him by the victims of an armed robbery shortly after the armed robbery. The appellate court found that the officer's pulling the vehicle over to the side of the road and having the driver and passenger step out was a justifiable *Terry* stop, but absent probable cause to believe that defendant and his passenger were the robbers, the *Terry* stop did not justify the officer's detaining a suspect and transporting him from the scene of the stop to another place for purposes of identification and further questioning.

The appellate court did not decide whether probable cause existed at the time the officer transported the defendant. The Illinois Supreme Court, however, reversed the appellate court and decided the probable cause issue. In its analysis, the supreme court determined that probable cause is a mixed question of law and fact. (*Lippert*, 89 Ill. 2d at 177, 432 N.E.2d at 607.) The court stated:

> "Probable cause for arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense." (*Lippert*, 89 Ill. 2d at 178, 432 N.E.2d at 608.)

The court then stated that mere suspicion that the person arrested has committed the offense is an insufficient basis for arrest. *Lippert*, 89 Ill. 2d at 178, 432 N.E.2d at 608.

■ Consistent with the *Lippert* analysis, we find that the facts of this case do not allow a finding of probable cause to search defendant's vehicle. The strongest factor connecting defendant's vehicle to the armed robbery is timing. The arrest of defendant occurred about 30 minutes after the armed robbery occurred. However, once the police stopped and questioned defendant and determined that defendant was not Lipscomb and that Lipscomb was not in defendant's car, no probable cause then existed to search defendant's car. At that point, the police had no basis to believe that defendant's car contained any fruits or instrumentalities of the armed robbery they were investigating. The record suggests that early on in their investigation the police jumped to the conclusion that Lipscomb had been a passenger in defendant's car and, in doing so, put "Mike's" name in defendant's mouth. The testimony of the police officers shows that defendant never acknowledged that he knew who his passenger was.

Thus, we affirm the trial court's granting of defendant's motion to suppress evidence. The trial court's findings are not manifestly erroneous. The trial court carefully examined the evidence adduced at the suppression hearing. The State has not met its burden to overturn the trial court's decision on the motion to suppress evidence. The trial court's finding of no probable cause for the search of the defendant's vehicle and the suppression of the evidence seized as the fruits of that search are affirmed.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.